UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MALIKA BENNETT, on her own behalf and on behalf of others similarly situated,,

Plaintiffs,

v.

FOOTWEAR UNLIMITED, INC.,

Defendant.

CASE NO. 2:26-cv-00822-TL

ORDER REMANDING CASE

This matter is before the Court *sua sponte*. Having reviewed the record, and finding oral argument unnecessary, *see* LCR 7(b)(4), the Court finds that it lacks subject-matter jurisdiction over this action. Therefore, pursuant to 28 U.S.C. § 1447(c), the Court REMANDS the case to King County Superior Court. *See D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008) ("Federal courts are *required* sua sponte to examine jurisdictional issues such as standing." (quoting *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2001))).

# I. BACKGROUND

## A. Commercial Electronic Mail Act and Consumer Protection Act

Washington's Commercial Electronic Mail Act ("CEMA"), Chapter 19.190 RCW, "prohibits sending Washington residents commercial e-mails that contain any false or misleading information in the subject lines of such e-mails." *Brown v. Old Navy, LLC*, 4 Wn.3d 580, 596, 567 P.3d 38 (2025) (emphasis removed). "A violation of CEMA's e-mail regulations is a per se violation of the Consumer Protection Act (CPA)." *Id.* at 584. In this case, Plaintiff alleges that she was the recipient of "commercial emails" from Defendant Footwear Unlimited, Inc., that, among other things, contained "subject lines [with] false or misleading statements in violation of her right to be free from such annoyance and harassment under CEMA." Dkt. No. 1-2 (state-court complaint) ¶ 100. Plaintiff specifically alleges that she received three such emails, and that the "subject lines contained false statements of fact as to the 'duration or availability of a promotion.'" *Id.* ¶¶ 101, 103. The subject lines allegedly "create[d] a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets." *Id.* ¶ 4.

## B. Procedural Background

On February 6, 2026, Plaintiff filed this purported class action in King County Superior Court, alleging violations of CEMA and the CPA. *See generally* Dkt. No. 1-2. On March 11, 2026, Defendant removed the action to federal court, asserting this Court's subject-matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). *See* Dkt. No. 1 (notice of removal) ¶ 8.

On May 18, 2026, Defendant moved to dismiss the case. Dkt. No. 28.

On July 9, 2026, the Court ordered Defendant to show cause as to why this case should not be remanded to Superior Court. Dkt. No. 39. On July 23, 2026, Defendant responded to the

show-cause order (Dkt. No. 40), and Plaintiff responded on July 29, 2026 (Dkt. No. 42). On August 4, 2026, Defendant filed a reply brief. Dkt. No. 43.

## II. Legal Standard

### A. Mandatory Remand

28 U.S.C. § 1447(c) provides, in part, that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *See Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th 1179, 1189–90 (9th Cir. 2022) (applying statute). The statute is imperative: "Section 1447(c) is mandatory, not discretionary." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997).

### B. Standing

Federal courts are constrained by the case-and-controversy requirement of Article III, which limits the jurisdiction of federal courts to cases where plaintiffs have established standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "Standing" exists where a plaintiff is entitled to bring their claims before the court and is an essential ingredient of determining a court's jurisdiction. *See Perry v. Newsom*, 18 F.4th 622, 630–31 (9th Cir. 2021). In order to have standing to bring a lawsuit, a plaintiff must demonstrate an injury that is (1) "concrete, particularized, and actual or imminent" (an "injury-in-fact"), (2) "fairly traceable to the challenged action," and (3) "redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

## III. Discussion

### A. Injury-in-fact

"Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins (Spokeo II)*, 578 U.S. 330, 341 (2016). This means that "a

plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Robins v. Spokeo, Inc. (Spokeo III)*, 867 F.3d 1108, 1112 (9th Cir. 2017) (quoting *Spokeo II*, 578 U.S. at 341); *see Stutsman v. Sirius XM Radio LLC*, No. C25-1113, 2026 WL 2445129, at *2 (W.D. Wash. Aug. 20, 2026) ("[T]he legislature's creation of a statutory prohibition or obligation and a cause of action 'does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III[.]'" (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021))).

Here, Plaintiff alleges one type of misconduct—that Defendant sent emails containing deceptive subject lines. *See* Dkt. No. 1-2 ¶ 3. Specifically, the offending subject lines "create a false sense of urgency [by] falsely claim[ing] that consumers' time to act is scarce." *Id.* ¶ 29. This, Plaintiff alleges, "manipulatively distort[s] [consumers'] decision-making to *their detriment—and the seller's benefit.*" *Id.* ¶ 36. According to Plaintiff, Defendant would allegedly advertise a sale through one email, "pressur[e] consumers to purchase quickly" in another, and then, in a third, extend the sale, thus rendering the original end-of-sale date deceptive. *Id.* ¶¶ 47, 48, 52.

But misconduct is one thing; injury caused by that misconduct is quite another. Here, the pleading appears to allege a single harm—violation of Plaintiff's "right to be free from such annoyance and harassment under CEMA." *Id.* ¶ 100. As to this statutory violation, in *Stutsman*, the court remanded a similar case to state court, "follow[ing] an ever-growing list of decisions finding that the mere receipt of alleged misleading or false marketing email subject lines, absent any allegation of economic loss, detrimental reliance, or any comparable injury, does not constitute a concrete harm sufficient to establish Article III injury." *Stutsman*, 2026 WL 2445129, at *4 (collecting cases). Similarly here, the pleading lacks any allegations of economic

loss or detrimental reliance. Plaintiff generically alleges that Defendant wasted her time (*see* Dkt. No. 1-2 ¶ 5) and harassed and annoyed her (*id.* ¶ 100). But such allegations of harm are exceedingly vague. For all of the hypothetical harm that the complaint attributes to Defendant's pattern of sending of these emails—e.g., creation of a false sense of urgency "in consumers' minds" and "from consumers' wallets" (*id.* ¶ 4), manipulation of consumer choice (*id.* ¶ 29), deprivation of consumers' ability to make informed buying decisions (*id.* ¶ 46)—there are no allegations that any of it actually befell Plaintiff.

In *Huong v. Beis LLC*, another CEMA case in this District, the plaintiff's pleading described plaintiff's "momentary panic upon reading the subject line of an email," because plaintiff thought "her identity had been stolen[.]" No. C26-2207, 2026 WL 2620511, at *2–3 (W.D. Wash. Sept. 4, 2026). This, at the very least, demonstrated some unpleasantness, however fleeting, associated with receipt of the emails at issue.[1] Here, however, nothing of the sort has been alleged. As pleaded, then, the statutory violation is not sufficient to demonstrate Article III injury.

As to the "nuisance or fraud actions" that Defendant invokes as resembling the instant case (Dkt. No. 40 at 3 (quoting *Liss v. Skechers USA Inc.*, No. C25-5861, 2026 WL 1392327, at *3 (W.D. Wash. May 19, 2026))), there are two problems with this argument.

First, Plaintiff does not actually allege how the flow of Defendant's emails into her inbox was a nuisance. In Washington, "generally, an activity is a nuisance only when it 'interferes unreasonably with other persons' use and enjoyment of their property.'" *Moore v. Steve's Outboard Serv.*, 182 Wn.2d 151, 155, 339 P.3d 169 (2014) (quoting *Tieg v. Watts*, 135 Wn.2d 1,

[1] Even so, the court concluded that Huong's panicked reaction was "insufficient to constitute an injury in fact that satisfies Article III." *Huong*, 2026 WL 2620511, at *3.

13, 954 P.2d 877 (1998)). Such "interference" is a specific and particular thing to suffer (and allege), and Plaintiff does not do so here.[2]

Second, as to fraud, Plaintiff simply fails to allege that she was defrauded. The Court is hard-pressed to construe the complaint as a pleading that alleges fraud as a cause of action. "Washington has adopted the nine common law elements of fraud, and, at its core, a fraud claim requires a false representation of material fact." *Puget Soundkeeper All. v. APM Terminals Tacoma LLC*, 574 F. Supp. 3d 903, 909 (W.D. Wash. 2021). The giveaway here is in the word "material." Because Plaintiff never alleges what actions she did or did not take in reliance on (or response to) the offending subject lines, there is simply nothing "material" about them. Plaintiff does not allege that she overpaid for anything, that she prematurely purchased something, or that she reacted to them in any notable way whatsoever. As alleged, the only manifest intersection between the alleged mistruth(s) and Plaintiff's life is the filing of this litigation. The Court will not locate an injury predicated upon fraud where Plaintiff has not given any indication that she was, in fact, defrauded.

In sum, Plaintiff has not established an injury-in-fact that is sufficiently concrete to confer Article III standing.

[2] The Parties lean heavily on the use of the word "spam" in the pleading, which is repeated nine times in the text and in section headers. *See, e.g.*, Dkt. No. 1-2 ¶¶ 1, 12, 14, 15, 17, 43, 44, 100; *see* Dkt. No. 42 at 3–4. In an introductory paragraph in *Gordon v. Virtumondo, Inc.*, the Ninth Circuit described spam in dicta as "ignored by most and reviled by some, [and] largely considered a nuisance and a source of frustration to e-mail users who, at times, must wade through inboxes clogged with messages peddling assorted, and often unwanted, products and services." 575 F.3d 1040, 1044–45 (9th Cir. 2009). The Ninth Circuit noted further, "While 'spam' in this context does not have a precise definition, it is typically understood to refer broadly to unsolicited e-mail messages (or 'junk' e-mail), typically commercial in nature. *Id.* at 1044 n.1. The Court declines to find within that language the creation of a per-se nuisance cause of action where one merely alleges receipt of spam. For one thing, the court writes descriptively, not definitively. For another, the adverbs *largely*, *at times*, *typically*, and *broadly* render the passage too imprecise and indirect to use as the foundation for a firm legal conclusion.

**B. Costs**

In responding to the Court's show-cause order, Plaintiff concurs with Defendant that she has sufficiently established Article III standing in her pleading. *See* Dkt. No. 42 at 3–5. No one, that is, has argued that Defendant "lacked an objectively reasonable basis for seeking removal," *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). Where Plaintiff is thus manifestly disinterested in recovering costs and expenses associated with the removal, *see* 28 U.S.C. § 1447(c), the Court will not go out of its way to find Defendant's basis for removal unreasonable.

**C. Other Pending Motions**

Because the Court does not have subject-matter jurisdiction, it lacks authority to decide Defendant's motion to dismiss (Dkt. No. 28) and the Partis' stipulated motion regarding discovery of electronically stored information (Dkt. No. 46). These motions are terminated.

## IV. CONCLUSION

Accordingly, it is hereby ORDERED that this case be REMANDED to King County Superior Court. The motions at Dkt. No. 28 and Dkt. No. 46 are TERMINATED.

Dated this 24th day of November 2026.

Tana Lin
United States District Judge